**J.C. HALLMAN MANUFACTURING COMPANY, LTD., Plaintiff,**

v.

**UNITED STATES, Defendant,**

**The Bloomfield Manufacturing Company, Inc., Defendant–Intervenor.**

Court No. 85–12–01699.

United States Court of International Trade.

Dec. 22, 1989.

Beveridge & Diamond, Alexander W. Sierck, Washington, D.C., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., J. Kevin Horgan and Elizabeth Seastrum, Washington, D.C., Douglas A. Riggs, Gen. Counsel, M. Jean Anderson, Chief Counsel for Intern. Trade for defendant.

Linda F. Potts, Arlington, Va., for defendant-intervenor.

### OPINION

TSOUCALAS, Judge:

Plaintiff challenges the inclusion of steel jack components and the inclusion and assignment of a zero purchase price to imported "demonstrator" jacks within the fi-

nal affirmative antidumping finding by the United States Department of Commerce, International Trade Administration (Commerce), in *Steel Jacks from Canada,* 50 Fed.Reg. 42,577 (Dep't Comm.1985). The action is before the Court on plaintiff's motion for judgment on the agency record pursuant to USCIT Rule 56.1(a).

### Background

The findings presently at issue relate to the second administrative review regarding certain steel jacks from Canada. The pertinent prior administrative history began on September 13, 1966, when the Secretary of Treasury issued a dumping finding with respect to steel jacks from Canada. *Steel Jacks from Canada,* 31 Fed.Reg. 11,974 (Dep't Treas.1966).

Commerce published the preliminary results of its first administrative review of the order on October 13, 1981,[1] and determined that antidumping duties should continue to be assessed on steel jacks imported from Canada. *Steel Jacks from Canada,* 46 Fed.Reg. 50,401 (Dep't Comm.1981). Plaintiff was the only manufacturer subject to the review which covered "shipments of steel jacks" classifiable under TSUS item 664.1057, during the period from January 1, 1977 to August 31, 1980. 46 Fed.Reg. at 50,401. In the final results of the first administrative review, *Steel Jacks from Canada,* 48 Fed.Reg. 35,688, (Dep't Comm.1983), Commerce revised its preliminary determination to include within the scope of the order "parts" of steel jacks. Upon further examination after the conclusion of the preliminary review, the "parts" were found to constitute, in essence, "unassembled jacks" and therefore within the scope of the antidumping finding. 48 Fed.Reg. at 35,689.[2]

In the second administrative review, Commerce again concluded that the "parts" imported by plaintiff "could be eas-ily finished and assembled to form completed jacks," and were "at least unassembled, unfinished jacks," therefore within the scope of the finding. 50 Fed.Reg. at 42,-577. Commerce also determined that certain entries of "demonstrator" or "sample" jacks delivered free of charge (on consignment to plaintiff's sales agents in the U.S.) during the review period should be assigned a zero purchase price for dumping purposes because there was no indication by plaintiff that it intended to have the sample jacks re-exported. *Id.* at 42,578.

Plaintiff challenges both determinations. Regarding the "unassembled jacks," plaintiff maintains that they are not properly within the class or kind of merchandise covered by the order because of the substantial amount of post-import work necessary to make the jacks a completed product. According to plaintiff, Commerce overlooked the large amount of value added by the post-import work, which was presumably significant enough to remove the product from the scope of the order. Therefore, plaintiff suggests that there is not substantial evidence in the record to sustain Commerce's conclusion that the processing steps in the United States amounted to only minor finishing operations.

As to the second challenge, Commerce assigned a zero purchase price to the "demonstrator" jacks because they were delivered free of charge and there was "no evidence in the record that Hallman, at the time of importation, intended to have the sample jacks re-exported." 50 Fed.Reg. at 42,578. Plaintiff, on the other hand, contends that there is no evidence in the record to support Commerce's determination that each of the consigned jacks was sold (or given away) by the sales agents during the review period and thus warranted the assignment of a zero sales price.

---

1. Following the enactment of the Trade Agreements Act of 1979, authority for the administration of the antidumping duty law was transferred from the Department of the Treasury to the Department of Commerce.

2. Plaintiff, in its principal brief, made arguments regarding the applicability of *Daisy–Heddon v. United States,* 66 CCPA 97, C.A.D. 1228, 600 F.2d 799 (1979), to the determination of whether the "parts" are properly within the scope of the order. However, in light of *Diversified Products Corp. v. United States,* 6 CIT 155, 160, 572 F.Supp. 883, 887 (1983), the Court finds *Daisy–Heddon* of limited applicability to antidumping actions.

The issues for decision are, thus, as follows:

(1) whether Commerce's determination that imports of component parts were of the class or kind of articles within the scope of the antidumping finding was supported by substantial evidence on the record, and in accordance with law; and,

(2) whether Commerce's determination to include within the scope of the review imported but unsold jacks and to assign them a zero purchase price was reasonable, supported by substantial evidence on the record, and in accordance with the law.

## Discussion

### I. Scope Determination

■ Commerce's determination will be sustained if it is supported by substantial evidence in the record and is otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed.Cir.1984). This Court has the authority to review Commerce's determination as to whether the "unassembled jacks" are within the scope of the existing antidumping duty order. 19 U.S.C. § 1516a(a)(2)(B)(vi). The "unassembled jacks" are of the class or kind of merchandise contemplated if they are assembled together in the United States to form the merchandise subject to the order, and if there is not a significant amount of value added during the United States assembly and processing operations. *See Gold Star Co. v. United States*, 12 CIT ——, 692 F.Supp. 1382 (1988), *aff'd sub nom.*, *Samsung Elec. Co. v. United States*, 873 F.2d 1427 (Fed.Cir.1989). Commerce reviewed the U.S. operations and concluded that "[t]he painting, assembly, labeling, and deburring performed by the U.S. customer were relatively minor, finishing opera-

tions." 50 Fed.Reg. at 42, 577.[3] The Court found nothing in the record to dispel Commerce's conclusion that the amount of value added by the United States processing operations was insignificant.

The Court, therefore, holds that Commerce's finding that component parts of jacks are within the scope of the antidumping duty order is based on substantial evidence on the record and in accordance with law.

### II. Assignment of Zero Purchase Price to "Sample" Jacks

■ The jacks in question were imported on a duty-paid basis. 50 Fed.Reg. at 42,578. Samples brought into the United States for the purpose of soliciting orders are given duty free treatment. However, such merchandise must have been imported under temporary importation bond as prescribed by the regulations. 19 C.F.R. § 10.31. Compliance with the pertinent regulations is mandatory. *See PPG Indus., Inc. v. United States*, 7 CIT 118, 1984 WL 3749 (1984). Absent proof of importation of merchandise under bond for temporary purposes, or any other persuasive evidence to the contrary, Commerce would have no way of knowing that the merchandise *is not* imported for sale. Therefore, Commerce acted reasonably in assigning a zero purchase price to the "sample" jacks, and properly included them within the scope of the order.

### Conclusion

Commerce's decision to include the "parts" or "unassembled" steel jacks within the scope of the antidumping duty order concerning *Steel Jacks from Canada*, 50 Fed.Reg. 42,577, is based on substantial evidence in the record and in accordance with law. In addition, Commerce's decision to include within the same order, certain "demonstrator" or "sample" jacks and to assign them a zero purchase price is like-

---

**3.** Plaintiff's reference to "drilling and tapping," although not mentioned specifically by Commerce, are operations, in the Court's opinion, which are reasonably subsumed within the assembly procedure.

wise based on substantial evidence in the record and in accordance with law.

This case having been duly submitted for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED, and DECREED: that plaintiff's motion for judgment on the agency record is denied, that Commerce's determination is affirmed, and the action is dismissed.