FAG ITALIA S.p.A. and Fag Bearings Corporation; SKF USA Inc. and SKF Industrie S.p.A., Plaintiffs and Defendant–Intervenors,

v.

UNITED STATES, Defendant,

and

The Torrington Company, Defendant–Intervenor and Plaintiff.

Slip Op. 96–187.
Court No. 95–03–O0335–S.

United States Court of
International Trade.

Nov. 22, 1996.

Grunfeld, Desiderio, Lebowitz & Silverman LLP, New York City (Max F. Schutzman and Andrew B. Schroth), for plaintiff and defendant-intervenor FAG.

Howrey & Simon, Washington, DC (Herbert C. Shelley, Alice A. Kipel, Anne Talbot and Patricia M. Steele) for plaintiff and defendant-intervenor SKF.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Velta A. Melnbrencis), of counsel: Mark A. Barnett, Michelle K. Behaylo, Stacy J. Ettinger, Thomas H. Fine, Dean A. Pinkert and David J. Ross, Attorney–Advisors, Office of Chief Counsel, for Import Administration, U.S. Department of Commerce, Washington, DC, for defendant.

Stewart and Stewart, Washington, DC (Terence P. Stewart, Wesley K. Caine, Geert De Prest and Lane S. Hurewitz), for defendant-intervenor and plaintiff Torrington.

## *OPINION*

TSOUCALAS, Senior Judge:

Plaintiffs and defendant-intervenors, FAG Italia S.p.A. and FAG Bearings Corporation (collectively "FAG") and SKF USA Inc. and SKF Industrie S.p.A. (collectively "SKF"), challenge aspects of the final results of the fourth antidumping administrative review of the antidumping duty orders, entitled *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et al.; Final Results of Antidumping Duty Administrative Reviews, Partial Termination of Administrative Reviews, and Revocation in Part of Antidumping Duty Orders ("Final Results")*, 60 Fed.Reg. 10,900 (1995), as amended, *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; Amendment to Final Results of Antidumping Duty Administrative Reviews and Recision of Partial Revocation of Antidumping Duty Order ("Amended Final Results")*, 60 Fed.Reg. 16,608 (1995).[1] Defendant-intervenor and plaintiff, The Torrington Company ("Torrington"), also challenges aspects of the fourth review.

## *Background*

The administrative review at issue was conducted by the Department of Commerce, International Trade Administration ("Commerce"), pursuant to section 751 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675

(1992), and concerns antifriction bearing ("AFB") imports entered during the fourth review period, from May 1, 1992 through April 30, 1993. *Final Results*, 60 Fed.Reg. at 10,901.

On February 28, 1994, Commerce published the preliminary results of the fourth administrative review. *See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Singapore, Sweden, Thailand, and the United Kingdom; Preliminary Results of Antidumping Duty Administrative Reviews, Partial Termination of Administrative Reviews, and Notice of Intent To Revoke Orders (in Part)*, 59 Fed.Reg. 9,463 (1994). On February 28, 1995, Commerce published the Final Results at issue. *See Final Results*, 60 Fed.Reg. 10,900. After correcting the calculation of U.S. price ("USP"), Commerce published its Amended Final Results on March 31, 1995. *Amended Final Results*, 60 Fed.Reg. 16,608.

On September 13, 1995, the Court consolidated *FAG Italia S.p.A. and FAG Bearings Corp. v. United States*, Court No. 95–03–00335–S, *SKF USA Inc. and SKF Industrie S.p.A. v. United States*, Court No. 95–04–00359, and *Torrington Co. v. United States*, Court No. 95–03–00352, into this action, Consolidated Court No. 95–03–00335–S. Pursuant to Rule 56.2 of the Rules of this Court, FAG, SKF and Torrington move for judgment on the agency record.

FAG alleges that Commerce erred in: (1) employing a rate-based, rather than amount-based, adjustment for value-added taxes ("VAT"); and (2) including sales of sample and prototype merchandise to U.S. customers in its margin calculation.

SKF alleges that Commerce erred in: (1) not utilizing a tax-neutral methodology for adjusting for VAT; (2) failing to exclude certain U.S. prototype transfers from the margin calculation; and (3) adopting an incorrect "all others" cash deposit rate for ball bearings from Italy.

---

**1.** While the Final Results cover antifriction bearings from nine countries, FAG and SKF challenge only the portions involving Italy in this

action. *See* FAG's Mem.Supp.Mot.J.Agency R. at 2; SKF's Mem.Supp.Mot.J.Agency R. at 1–2.

Torrington claims that Commerce erred in: (1) failing to apply 19 C.F.R. § 353.26 (1994), known as the reimbursement regulation, in all instances where (a) transfer prices between related exporters and importers were less than cost of production plus profit, or, alternatively, cost of production, and (b) actual dumping margins were found; (2) taking below-cost sales into account in calculating profit for constructed value; (3) resorting to the use of constructed value where sales were made below cost without first determining whether there were other similar models which could serve as price-based comparisons; (4) adjusting foreign market value for pre-sale inland freight expenses; and (5) making clerical errors.

### Discussion

The Court has jurisdiction over this matter under 19 U.S.C. § 1516a(a)(2) (1994) and 28 U.S.C. § 1581(c) (1994).

■ The Court must uphold Commerce's final determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)). "It is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States,* 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed.Cir.1990).

1. *Commerce's VAT Adjustment Methodology*

■ FAG and SKF challenge the VAT adjustment methodology that Commerce applied in the fourth review, arguing that Commerce should adopt a tax-neutral methodology and add to USP the absolute amount, as opposed to the *ad valorem* rate, of VAT collected on the relevant home market sale.

FAG's Mem.Supp.Mot.J.Agency R. at 7–10; SKF's Mem.Supp.Mot.J.Agency R. at 13–27.

Torrington claims that, while a remand is appropriate for Commerce to review its methodology, the Court should not direct Commerce to employ a specific methodology. Torrington's Opp'n to Mots.J.Agency R. at 7–14.

Commerce has decided to return to the tax-neutral methodology that the United States Court of Appeals for the Federal Circuit ("CAFC") held was a reasonable statutory interpretation in *Federal–Mogul v. United States,* 63 F.3d 1572 (Fed.Cir.1995), and consents to a remand for this purpose. Def.'s Partial Opp'n to Mots.J.Agency R. at 11; *see also FAG U.K. Ltd. v. United States,* 20 CIT ——, ——, 945 F.Supp. 260, 264 (1996) (Commerce similarly consented to, and the Court granted, a remand for the same purpose); *Torrington Co. v. United States,* 20 CIT ——, ——, 944 F.Supp. 930, 936–37 (1996) (same). Hence, in accordance with *Federal–Mogul,* Commerce is required upon remand to implement the approved tax-neutral methodology in recalculating the adjustment to USP for FAG's and SKF's dumping margins.

2. *Inclusion of Sales to U.S. Customers of Alleged Sample and Prototype Merchandise in Margin Calculations*

FAG and SKF contend that Commerce improperly included zero-priced or *de minimis* U.S. sales of sample and prototype merchandise in its margin calculation of USP. FAG's Mem.Supp.Mot.J.Agency R. at 11–18; SKF's Mem.Supp.Mot.J.Agency R. at 28–41. FAG argues that such sales are atypical of those made in the ordinary course of business in the U.S. and, if included, unfairly distort the measure of actual dumping. FAG's Mem.Supp.Mot.J.Agency R. at 11–16. FAG adds that Commerce's inclusion of such distortive sales offends fundamental principles of fairness and improperly amounts to a punitive application of the dumping law. *Id.* at 17–18.

In the alternative, FAG claims that if sample and prototype sales are included in Commerce's margin calculations, a circumstance

of the sale ("COS") adjustment should be made to foreign market value ("FMV") to account for the inclusion of the distortive sales. *Id.* at 16–17.

SKF claims that the alleged prototype AFBs it supplied to one United States customer should have been excluded from the USP margin calculation because the AFBs at issue were not used for commercial consumption and were destroyed during tests conducted by the U.S. customer. SKF's Mem.Supp.Mot.J.Agency R. at 31–33.

Commerce responds that, although in certain circumstances it may conclude that a U.S. sample is not a sale and thus exclude it from a margin analysis, Commerce is not required to exclude zero-priced or *de minimis* sales from its analysis. Def.'s Partial Opp'n to Mots.J.Agency R. at 11–28. Further, Commerce asserts that a COS adjustment is unnecessary where there is merely a difference in prices charged. *Id.* at 28–30. Torrington agrees generally with the positions taken by Commerce. Torrington's Opp'n to Mots.J.Agency R. at 8–23.

■ This Court recently addressed FAG's primary claim in *FAG U.K. Ltd.,* 945 F.Supp. at 264–66, and concluded that it is without merit for the following reasons. First, Commerce is not required by statute or regulation to exclude zero-priced or *de minimis* sales from its analysis.[2]

■ Second, Commerce can only exclude sales from USP in an administrative review in exceptional circumstances when those sales are unrepresentative and extremely distortive.[3] *See Ipsco v. United States,* 13 CIT 402, 408, 714 F.Supp. 1211, 1217 (1989) (a sale is excluded only when its inclusion would lead to an unrepresentative price comparison,

thus frustrating the "apples to apples" comparison goal of the antidumping laws), *rev'd on other grounds,* 965 F.2d 1056 (Fed.Cir. 1992); *see also U.H.F.C. Co. v. United States,* 916 F.2d 689, 697 (Fed.Cir.1990); *Smith–Corona Group v. United States,* 713 F.2d 1568, 1578 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984).[4]

■ Finally, for Commerce to disregard a sale as a sample, the respondent must establish that the sale was a true *de minimis* sample through appropriate procedures. *See, e.g., J.C. Hallman Mfg. Co. v. United States,* 13 CIT 1073, 1076, 728 F.Supp. 751, 753 (1989). Commerce inspects the following factors to decide whether an alleged sample is truly a sample: (1) whether ownership has changed hands; and (2) whether the sample was returned to the respondent, or destroyed in the testing process. *See Granular Polytetrafluoroethylene Resin from Japan; Final Results of Anti-dumping Duty Administrative Review ("PTFE Resin"),* 58 Fed.Reg. 50,343, 50,345 (1993). Further, because true samples are intended to be returned, they must be imported under a temporary import bond. *See J.C. Hallman,* 13 CIT at 1076, 728 F.Supp. at 753. In *J.C. Hallman,* this Court stated that

> [a sample] must [be] imported under temporary importation bond as prescribed by the regulations. Compliance with the pertinent regulations is mandatory. Absent proof of importation of merchandise under bond for temporary purposes, or any other persuasive evidence to the contrary, Commerce would have no way of knowing that the merchandise *is not* imported for sale.

*Id.* (citations omitted).

In this case, FAG has merely claimed that the items it labeled as samples should be

---

2. In fact, unlike the definition of FMV, the definition of USP contains no requirement that the prices used in USP calculations be the prices charged "in the ordinary course of trade." *See* 19 U.S.C. §§ 1677a & 1677b(a)(1)(A) (1988); *see also Floral Trade Council of Davis, Cal. v. United States,* 15 CIT 497, 508 n. 18, 775 F.Supp. 1492, 1503 n. 18 (1991).

3. For instance, in *Chang Tieh Indus. Co. v. United States,* 17 CIT 1314, 1318–19, 840 F.Supp. 141, 145–46 (1993), Commerce excluded sales to prevent a fraud on Commerce's proceedings.

4. FAG heavily relies on several cases that discuss the exclusion of certain sales from less than fair value ("LTFV") investigations. *See* FAG's Mem.Supp.Mot.J.Agency R. at 13–14. The sales information at issue, however, was collected pursuant to an administrative review, and not a LTFV investigation. While Commerce has the discretion to eliminate unusual sales from its LTFV investigations, *see* 19 C.F.R. § 353.42(b) (1994), this authority does not extend to administrative reviews, in which each entry must be included. *See* 19 U.S.C. § 1675(a)(2)(A).

excluded from USP calculations. FAG has failed to demonstrate that these items were true samples through the court-sanctioned procedures established by Commerce and approved in *J.C. Hallman*.

This Court also recently concluded that FAG's alternative argument is without merit. *See FAG U.K. Ltd.*, 945 F.Supp. at 265–66. Commerce's regulations clearly require that a COS adjustment be made when an expense had an *effect* on the prices charged, rather than where there is merely a difference in the prices charged. *See* 19 C.F.R. § 353.56(a). FAG has stated only that it is entitled to a COS adjustment because the sample sales were zero-priced. As this Court has previously noted, such an argument can be made for any dumped sale. *See FAG U.K. Ltd.*, 945 F.Supp. at 265–66 n. 3. Consequently, FAG has failed to demonstrate that the different circumstances between its sample and prototype U.S. sales and its home market sales had an effect on the prices charged. Commerce's inclusion of the sales FAG labeled as samples for purposes of calculating USP is sustained.

■ SKF's prototype sales also do not constitute true samples. First, SKF does not claim that it imported the prototype AFBs under a temporary import bond. Further, as previously stated, to determine whether samples constitute a sale, the samples must be transferred free of charge and without a change in ownership. *See PTFE Resin*, 58 Fed.Reg. at 50,345. In this case, SKF admits that the prototype AFBs at issue were purchased for value by the U.S. customer and that title to the AFBs transferred to the U.S. customer. *See* SKF's App., Ex. 4, at 11 & 13. Consequently, it is irrelevant that the AFBs were not returned to SKF because they were destroyed during testing.

3. *"All Others" Cash Deposit Rate for AFBs From Italy*

■ SKF claims that Commerce improperly adopted the "all others" future importation cash deposit rate published in the third administrative review for ball bearings from Italy in the fourth administrative review. SKF's Mem.Supp.Mot.J.Agency R. at 41–48.

Commerce responds that SKF lacks standing to bring this argument and has failed to exhaust its administrative remedies with respect to this claim. Def.'s Partial Opp'n to Mots.J.Agency R. at 30–39. Commerce contends that because SKF has been assigned a company-specific rate for AFBs from Italy, the Court cannot render a remedy that directly benefits SKF. *Id.* at 32. Commerce further contends that while SKF was clearly on notice with respect to Commerce's intentions regarding this issue, SKF failed to exhaust its administrative remedies because it did not object until after Commerce released the Final Results. *Id.* at 36–39.

Torrington agrees generally with Commerce that SKF lacks standing and has failed to exhaust its administrative remedies over this issue. *See* Torrington's Opp'n to Mots.J.Agency R. at 23–30. Torrington adds that the correction of the "all others" rate is moot on practical grounds because a court decision cannot correct a rate where Commerce's automatic assessment regulation, 19 C.F.R. § 353.22(e) (1994), applies. *Id.* at 27–28.

Torrington's assertion that this issue is moot on practical grounds is incorrect. First, the AFBs at issue in the fourth administrative review remain subject to an injunction issued by this Court and have not yet been liquidated. *See Torrington Co. v. United States*, Ct. No. 95–03–00348, Inj. at 4–5 (May 3, 1995).

■ Further, the automatic assessment regulation cannot be interpreted to require the assessment of the cash deposit rate posted and to preclude this Court from correcting an error by Commerce. Under the automatic assessment regulation, when no party requests an annual review of the producer or exporter of the imported goods, antidumping duties are to be assessed "at rates equal to the cash deposit of, or bond for, estimated antidumping duties required" on the goods at the time of entry. 19 C.F.R. § 353.22(e)(1). To allow this regulation, however, to prevent the Court from correcting an error in Commerce's final results would be absurd and

contrary to the intent of 19 U.S.C. § 1516a(e) (1994).[5]

In *Comeau Seafoods Ltd. v. United States*, 13 CIT 923, 928–29, 724 F.Supp. 1407, 1412 (1989), this Court held that, if Commerce employed a methodology that resulted in the posting of an incorrect deposit rate, Commerce must correct its mistake, regardless of the automatic assessment regulation covering countervailing duties.[6] This Court stated that if the automatic assessment rate "happens to be different than the Court corrected rate, the merchandise will be liquidated at the corrected rate.... To hold otherwise would render § 1516a(e) meaningless." *Id.* at 929, 724 F.Supp. at 1412.

The same rationale applies to the automatic assessment regulation covering antidumping duties in this case. SKF has not waived any right to contest, and this Court is not precluded from correcting, the liquidation of SKF's entries at the rate deposited because SKF failed to ask Commerce for a review.

While this issue is not moot, SKF lacks constitutional standing to bring it before the Court. Under Article III of the Constitution, this Court can only adjudicate matters involving an actual case or controversy. *See Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). The Supreme Court has required that a plaintiff demonstrate the following elements to have standing under the Constitution: (1) "injury in fact" (*i.e.*, an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent); (2) causation between the injury and the conduct complained of; and (3) likelihood the injury

can be redressed. *Cook v. United States Senate*, 20 CIT ——, ——, Slip Op. 96–34, at 4, 1996 WL 61641 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992)).

SKF admits that the "all others" rate applies to entries of merchandise "where the goods in question are neither manufactured nor exported by a firm as to whom there exists a company-specific rate from the investigation or a prior review." SKF's Mem.Supp.Mot.J.Agency R. at 48. However, because Commerce calculated a company-specific cash deposit rate for SKF, *see Final Results*, 60 Fed.Reg. at 10,960, the "all others" future deposit rate has no applicability to any of SKF's entries.[7] Consequently, SKF has not been injured in fact and lacks constitutional standing to challenge Commerce's treatment of the "all others" rate.[8]

Whether SKF has failed to exhaust its administrative remedies with respect to this issue turns on whether the error SKF alleges is ministerial or the result of Commerce's methodology. If Commerce's cash deposit rate was incorrect due to a ministerial error, SKF challenged the alleged error in a proper and timely manner, within five days of the publication of the Final Results. *See* 19 C.F.R. § 353.28 (1994). As SKF lacks standing to bring forth this claim, however, it is unnecessary for the Court to decide this issue.

#### 4. *Reimbursement of Antidumping Duties*

 Torrington claims that Commerce erred by failing to apply the reimbursement

---

**5.** 19 U.S.C. § 1516a(e) states that if a cause of action is sustained by this Court in whole or in part, the entries of merchandise covered by the Court's determination "shall be liquidated in accordance with the final court decision in the action."

**6.** The automatic assessment regulation for countervailing duties at issue in *Comeau* is virtually identical to the automatic assessment regulation for antidumping duties at issue here. *Compare* 19 C.F.R. § 355.10(d) (1987) *with* 19 C.F.R. § 353.22(e).

**7.** SKF contends that it has standing because the "all others" rate *would* apply to *SKF USA* bearing imports from Italy that were neither manu-

factured nor exported by a firm for which Commerce has not calculated a company-specific rate. SKF's Reply Mem.Supp.Mot.J.Agency R. at 7–8. This contention has no merit, however, as Commerce has calculated a company-specific rate for SKF importations. *See* Final Results, 60 Fed.Reg. at 10,960. Hence, SKF has not been injured in fact by the "all others" rate, and lacks constitutional standing to challenge the rate.

**8.** The Supreme Court has also required that a plaintiff satisfy certain prudential requirements for standing to exist. *See, e.g., Allen*, 468 U.S. at 750–51, 104 S.Ct. at 3324–25. However, because SKF lacks constitutional standing with respect to this issue, it is unnecessary for this Court to decide whether SKF has prudential standing.

regulation where (a) transfer prices were less than cost plus profit (or cost), and (b) actual dumping margins were found. Torrington's Mem.Supp.Mot.J.Agency R. at 12–22. In particular, Torrington claims that when a foreign exporter (usually the manufacturer) transfers merchandise to a related U.S. importer at prices below the cost of production plus profit (or cost) and actual dumping margins are found, the artificially low transfer price is equivalent to a transfer of funds, and so, should be regarded as a "duty reimbursement." *Id.* at 14. Torrington contends that these alleged duty reimbursements should be deducted from USP pursuant to 19 C.F.R. § 353.26(a)(1). *Id.* In the alternative, Torrington claims that Commerce should have further investigated possible reimbursement. *Id.* at 22–23.

Torrington also challenges Commerce's determination that the reimbursement regulation does not apply to exporter's sales price ("ESP") situations. *Id.* at 15–20.

Commerce maintains that such a "transfer of funds" is not evidence of a reimbursement and, consequently, no adjustment to USP is necessary. Def.'s Partial Opp'n to Mots.J.Agency R. at 39–43. Commerce also responds that it was not required to conduct a further investigation of possible reimbursement of duties. *Id.* at 43. SKF agrees with the position taken by Commerce. SKF's Opp'n to Torrington's Mot.J.Agency R. at 9–31. However, Commerce consents to a remand to clarify its position regarding the circumstances under which it will apply the reimbursement regulation in an ESP situation. Def.'s Partial Opp'n to Mots.J.Agency R. at 43.

This same issue was brought before the Court in *Federal–Mogul Corp. v. United States,* 20 CIT ——, ——, 918 F.Supp. 386, 393–94 (1996). *See also Torrington,* 944 F.Supp. at 933–34. In *Federal–Mogul,* the Court sustained Commerce's decision not to adjust USP based upon intracompany transfers because the plaintiffs failed to "establish a link between intracorporate transfers and

the reimbursement of antidumping duties." 20 CIT at ——, 918 F.Supp. at 394. For the reimbursement regulation to apply, the Court has required evidence beyond a mere allegation that the foreign manufacturer either paid the antidumping duty on behalf of the U.S. affiliate importer, or reimbursed the U.S. affiliate importer for its payment of the antidumping duty. *Torrington Co. v. United States,* 19 CIT ——, ——, 881 F.Supp. 622, 631 (1995); *see also Outokumpu Copper Rolled Prods. AB v. United States,* 17 CIT 848, 863, 829 F.Supp. 1371, 1383 (1993) ("the court emphasizes that 19 C.F.R. § 353.26 (1992) permits adjustment to United States price *only* where the producer or reseller *paid duties on behalf of the importer* or *reimbursed the importer* "). As in *Torrington* and *Federal–Mogul,* Torrington has presented no such evidence in this case. Mere evidence of intracompany transfers does not constitute a reimbursement and does not require Commerce to adjust USP.

There is no statutory or regulatory support for Torrington's alternative assertion. Indeed, this Court previously addressed this issue in a challenge to the second review. In *Torrington,* the Court refused to remand the case for further investigation, stating that because plaintiff had failed to provide evidence of a link between intracorporate transfers and the reimbursement of anti-dumping duties, Commerce properly decided not to commit resources to conduct an investigation. 19 CIT at ——, 881 F.Supp. at 632. *See also Torrington,* 944 F.Supp. at 933–34. Similarly, in this case, Torrington has failed to provide such evidence. Hence, Commerce is under no duty to conduct a further investigation. The Court concludes that Commerce's decision not to adjust USP is supported by substantial evidence on the agency record and in accordance with law.

Commerce implied in the Final Results that it would never apply the reimbursement regulation in an ESP situation.[9] *See Final Results,* 60 Fed.Reg. at 10,907. Commerce now states that such an implication does not

---

**9.** In deriving a USP to compare with FMV for dumping purposes, USP may be calculated on the basis of ESP (price at which a foreign manufacturer sells goods to a related U.S. importer),

or purchase price (price at which a foreign manufacturer sells goods to an independent U.S. importer). 19 U.S.C. § 1677a(a) & (b) (1988).

represent its position, as it is inconsistent with the reimbursement regulation, and consents to a remand to clarify its position. Def.'s Partial Opp'n to Mots.J.Agency R. at 43. The Court agrees that remand is necessary for Commerce to explain the circumstances in which it will apply the regulation in an ESP situation.

### 5. *Inclusion of Below–Cost Sales in the Calculation of Profit for Constructed Value*

Torrington claims that Commerce improperly included below-cost sales in its calculations of profit for use in CV. Torrington's Mem.Supp.Mot.J.Agency R. at 23–29. Torrington contends that the inclusion of below-cost sales distorts the statutory scheme because such sales are not made in the ordinary course of trade. *Id.* at 24.

In the alternative, Torrington argues that assuming, *arguendo,* that below-cost sales should not be excluded in calculating profit, Commerce should have nevertheless recomputed profits on the basis of the sample sales reported. Torrington's Mem.Supp.Mot.J.Agency R. at 29–32. In particular, Torrington claims that because the sample sales that Commerce used are representative for the purpose of price-to-price comparisons, the profit realized on these sales must be representative of the profit on the general class or kind of merchandise. *Id.* at 31. Hence, Torrington contends that Commerce should have computed CV based on the reported sample sales of such or similar merchandise. *Id.* at 29.

Commerce responds that neither the definition of CV, as stated in 19 U.S.C. § 1677b(e)(1)(B) (1988), nor the definition of the ordinary course of trade, as stated in 19 U.S.C. § 1677(15) (1988), suggests that below-cost sales were outside the ordinary course of trade, and so, such costs should be included in the CV calculation. Def.'s Partial Opp'n to Mots.J.Agency R. at 44–45. FAG and SKF agree with the position taken by Commerce. FAG's Opp'n to Torrington's Mot.J.Agency R. at 10–24; SKF's Opp'n to Torrington's Mot.J.Agency R. at 31–63.

The statutory language supports Commerce's position. In calculating CV, Commerce includes profits for sales of merchandise of the same general class or kind in the home market, in the usual quantities and in the ordinary course of trade. *See* 19 U.S.C. § 1677b(e)(1). The statute itself does not limit the meaning of "ordinary course of trade" to sales made above cost but, rather, defines it as "the conditions and practices which … have been normal in the trade under consideration with respect to merchandise of the same class or kind." 19 U.S.C. § 1677(15).

 As this Court has recently concluded in several cases, for below-cost sales to be excluded from a CV calculation, a plaintiff must show that such sales were made outside the ordinary course of trade. *See FAG U.K. Ltd.,* 945 F.Supp. at 269; *Torrington,* 944 F.Supp. at 934–35; *Timken Co. v. United States,* 20 CIT ——, ——, 930 F.Supp. 621, 624–25 (1996); *Federal–Mogul,* 20 CIT at ——, 918 F.Supp. at 403; *Torrington,* 19 CIT at ——, 881 F.Supp. at 633. In this case, Torrington has claimed that merely because the sales are below cost, they are outside of the ordinary course of trade. Torrington has not demonstrated that the below-cost sales at issue are actually outside of the ordinary course of trade. Consequently, Commerce did not improperly include below-cost sales in calculating profit for CV purposes, and the inclusion of below-cost sales did not distort the statutory scheme.

Torrington's alternative argument has also been addressed by this Court and is without merit. This Court has concluded that because 19 U.S.C. § 1677f–1 (1988) explicitly grants Commerce the authority to select appropriate samples for determining USP and FMV, and because Commerce has such broad discretion in its sample selection methodology, Commerce should also have discretion not to use samples at all. *Federal–Mogul,* 20 CIT at ——, 918 F.Supp. at 404. *See also FAG U.K. Ltd.,* 945 F.Supp. at 269; *Torrington,* 944 F.Supp. at 935. The legislative history of section 1677f–1 also supports this position.[10]

---

**10.** According to the legislative history, the pur-

pose of section 1677f–1 is to "reduce the costs

In this case, as in *Federal–Mogul*, 20 CIT at ——, 918 F.Supp. at 403, Commerce did not believe that the profit on the sale of such or similar merchandise could be presumed to be representative of the profit for the general class or kind of merchandise. *Final Results*, 60 Fed.Reg. at 10,923 (Comment 5). Under this Court's rationale in *Federal–Mogul*, Commerce's decision not to rely on the samples for calculating CV is reasonable and in accordance with law.

### 6. *Use of CV to Calculate FMV*

Torrington also claims that Commerce resorted prematurely to CV during its FMV calculation. Torrington's Mem.Supp.Mot.J.Agency R. at 32–37. Specifically, Torrington contends that after finding that the most similar home market model was sold below cost in 90 percent of the home market sales, and over an extended period of time, Commerce resorted to CV without first determining whether there were any other similar models that could have served as price-based comparisons. *Id.* Torrington argues that there is a strong statutory preference for calculating FMV based on home market sales, rather than on CV. *Id.* at 33.

Commerce responds that 19 U.S.C. § 1677b(b) (1988) directs it to resort immediately to CV once Commerce finds and disregards all home market sales of "matching" merchandise. Def.'s Partial Opp'n to Mots.J.Agency R. at 53–59. FAG and SKF agree generally with the position taken by Commerce. FAG's Opp'n to Torrington's Mot.J.Agency R. at 25–30; SKF's Opp'n to Torrington's Mot.J.Agency R. at 63–77.

■■■ This Court recently addressed this issue and concluded that Commerce's methodology was reasonable. *See Federal–Mogul*, 20 CIT at ——, 918 F.Supp. at 394–97; *see also FAG U.K. Ltd.*, 945 F.Supp. at 270; *Torrington*, 944 F.Supp. at 936. To determine the amount of antidumping duties to be assessed on a particular entry of merchandise, Commerce is required to compare the merchandise sold in the United States with

"such or similar" merchandise, as defined by 19 U.S.C. § 1677(16), sold in the home country or to a third country. *See Federal–Mogul*, 20 CIT at ——, 918 F.Supp. at 395. Under its current methodology, Commerce disregards all home market sales and immediately resorts to CV if more than 90 percent of home market sales of the model were made below cost over an extended period of time, and are not at prices that permit recovery of all costs within a reasonable period of time in the ordinary course of trade. *See Final Results*, 60 Fed.Reg. at 10,935–36.

As this Court decided in *Federal–Mogul* and the similar cases that followed, Commerce is not required to investigate whether it can make another match based on the next most similar merchandise before resorting to CV. *See Federal–Mogul*, 20 CIT at ——, 918 F.Supp. at 396; *FAG U.K. Ltd.*, 945 F.Supp. at 270; *Torrington*, 944 F.Supp. at 936. Indeed, the statutory language *requires* Commerce to resort to CV when sales are disregarded. *See* 19 U.S.C. § 1677b(b); *see also Zenith Elecs. Corp. v. United States*, 18 CIT ——, ——, 872 F.Supp. 992, 998–1000 (1994).

In this case, Commerce matched certain AFB models sold to the United States with identical AFB models sold in the home market. *See Final Results*, 60 Fed.Reg. at 10,-935–36. After an investigation, Commerce concluded that the model AFBs were inadequate under 19 U.S.C. § 1677b(b), and so, Commerce used CV to determine FMV. *See id.* Commerce was not required to use the price of the next most similar merchandise. This methodology was upheld in *Federal–Mogul*, *FAG U.K. Ltd.* and *Torrington* and is fully in accordance with law.

### 7. *Adjustment of FMV For Pre–Sale Inland Freight*

■■■ Torrington claims that Commerce's adjustment of FMV for home market pre-sale inland freight, *see* 60 Fed.Reg. at 10,-941–42, is contrary to law. Torrington's Mem.Supp.Mot.J.Agency R. at 37–39.

and administrative burden on the Department of Commerce of determining dumping margins." H.R.Rep. No. 725, 98th Cong., 2d Sess. 46 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5127,

5173. Consequently, it is clear that Commerce is not *required* to use sampling under section 1677f–1. Rather, Commerce is *permitted* to use sampling when necessary.

Commerce responds that its FMV adjustment for pre-sale inland freight is reasonable and has been previously upheld by this Court, as well as the CAFC. Def.'s Partial Opp'n to Mots.J.Agency R. at 47–48. FAG and SKF agree generally with the position taken by Commerce. FAG's Opp'n to Torrington's Mot.J.Agency R. at 30–33; SKF's Opp'n to Torrington's Mot.J.Agency R. at 77–78.

When Commerce uses ESP to determine USP, it performs an "ESP offset," *i.e.*, it adjusts FMV by deducting indirect selling expenses, including pre-sale inland freight expenses. 19 C.F.R. § 353.56(b)(2) (1994). The CAFC has held that it is reasonable for Commerce to deduct indirect selling expenses, such as indirect transportation expenses, from FMV. *Torrington Co. v. United States*, 68 F.3d 1347, 1356 (Fed.Cir.1995). *See also FAG U.K. Ltd.*, 945 F.Supp. at 270; *Torrington*, 944 F.Supp. at 936; *Timken*, 20 CIT at ——, 930 F.Supp. at 626–27. Hence, Commerce's adjustment of FMV for home market pre-sale inland freight expenses is fully in accordance with law.

### 8. *Clerical Errors*

Torrington contends that Commerce committed clerical errors with respect to certain FAG U.S. sales. Torrington's Mem.Supp.Mot.J.Agency R. at 39–40. Commerce agrees that clerical errors were committed and consents to a remand to correct the errors. Def.'s Partial Opp'n to Mots.J.Agency R. at 61. After review of the record, the Court finds that clerical errors were made with respect to the sales at issue. Upon remand, Commerce is to correct the clerical errors with respect to the FAG U.S. sales at issue.

### *Conclusion*

In accordance with the foregoing opinion, this case is remanded to Commerce to allow it to: (1) utilize the approved tax-neutral methodology for adjusting for value-added taxes in FAG's and SKF's dumping margins; (2) explain the circumstances in which it will apply the reimbursement regulation in an

ESP situation; and (3) correct the clerical errors with respect to FAG's U.S. sales. The Final Results and Amended Final Results are sustained as to all other issues raised by FAG, SKF and Torrington.

### *ORDER*

This case having been duly submitted for a decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that this case is remanded to the Department of Commerce, International Trade Administration ("Commerce"), to utilize the tax-neutral methodology for adjusting FAG Italia S.p.A.'s and FAG Bearings Corporation's (collectively "FAG") and SKF USA Inc.'s and SKF Industrie S.p.A.'s dumping margins for value-added taxes approved by the United States Court of Appeals for the Federal Circuit in *Federal–Mogul Corp. v. United States*, 63 F.3d 1572 (Fed.Cir.1995); and it is further

**ORDERED** that Commerce explain the circumstances in which it will apply the reimbursement regulation in an exporter's sales price situation; and it is further

**ORDERED** that Commerce correct the clerical errors with respect to FAG's U.S. sales; and it is further

**ORDERED** that Commerce's determination is affirmed in all other respects; and it is further

**ORDERED** that the remand results are due within ninety (90) days of the date that this opinion is entered. Any comments or responses by the parties to the remand results are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date that the responses or comments are due.