The **TORRINGTON COMPANY**, Plaintiff,

v.

**UNITED STATES**, Defendant,

and

**NMB Thai Ltd., Pelmec Thai Ltd., NMB Hi–Tech Bearings Ltd. and NMB Corporation, Defendants–Intervenors.**

**Slip. Op. 97–105.**
**Court No. 96–07–01782.**

United States Court of
International Trade.

July 28, 1997.

sults of the fifth antidumping administrative review of the antidumping duty order, entitled *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof from Thailand; Final Results of Antidumping Duty Administrative Review and Revocation of Antidumping Duty Order ("Final Results ")*, 61 Fed.Reg. 33,711 (June 28, 1996). The administrative review at issue was conducted by the Department of Commerce, International Trade Administration ("Commerce"), and concerns antifriction bearing ("AFB") imports entered during the fifth review period, from May 1, 1993 through April 30, 1994. *Final Results,* 61 Fed.Reg. at 33,711.

Torrington claims that Commerce erred in: (1) relying upon related party sales as a basis for calculating constructed value ("CV") profits; (2) treating NMB Thai Ltd., Pelmec Thai Ltd., NMB Hi–Tech Bearings Ltd. and NMB Corporation (collectively "NMB") Route B sales as home market sales; (3) failing to determine whether antidumping duties were reimbursed to the importer; and (4) revoking the antidumping duty order at issue.

Stewart and Stewart, Washington, DC (Terence P. Stewart, James R. Cannon, Jr., Geert De Prest and Mara M. Burr), for The Torrington Company.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Velta A. Melnbrencis); of counsel: Stacy J. Ettinger, Washington, DC, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.

White & Case, Washington, DC (William J. Clinton, Christopher F. Corr and Richard J. Burke), for NMB Thai Ltd., Pelmec Thai Ltd., NMB Hi–Tech Bearings Ltd. and NMB Corporation.

## OPINION

TSOUCALAS, Senior Judge.

Plaintiff, The Torrington Company ("Torrington"), challenges aspects of the final re-

### Discussion

The Court has jurisdiction over this matter under 19 U.S.C. § 1516a(a)(2) (1994) and 28 U.S.C. § 1581(c) (1994).

The Court must uphold Commerce's final determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). "It is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States,* 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed.Cir.1990).

## 1. *Related Party Sales as a Basis for CV*

For purposes of calculating CV, Commerce used profit information it obtained from NMB's questionnaire responses, which included related party sales. *See Final Results*, 61 Fed.Reg. at 33,712. Torrington argues that Commerce should have automatically excluded related party sales found not to be at arm's length from the calculation of profit. Torrington cites to the fourth administrative review of AFBs, contending that it has been Commerce's practice to exclude all related party sales in calculating profit for CV. Torrington's Mem.Supp.Mot.J. Agency R. at 15–17. Torrington also argues that there was sufficient evidence on the record for Commerce to perform a profit variance test and points to its April 26, 1995, submission, which allegedly demonstrates that the profit margins establish that the related party sales at issue were not made in the ordinary course of trade. *Id.* at 10–11 (citing *Torrington's Profit Variance Submission*, C.R. Doc. No. 22, at 5, Torrington's App., Ex. F (April 26, 1995)).

Commerce first responds that in the fourth review it applied both an arm's-length test and a profit variance test to determine whether to disregard related party sales for the purpose of calculating profit for CV, and did not *automatically* exclude such sales. Def.'s Opp'n to Mot. J. Agency R. at 6–7 (citing *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et. al.; Final Results of Antidumping Duty Administrative Reviews, Partial Termination of Administrative Reviews, and Revocation in Part of Antidumping Duty Orders*, 60 Fed.Reg. 10,900, 10,922 (Feb. 28, 1995)). Further, Commerce asserts that it was unable to perform a profit variance test, *i.e.*, to determine whether the profit on sales that failed the arm's-length test varied significantly from the profit on sales to unrelated parties, because there was insufficient data on the record. In essence, Commerce claims that because it did not conduct a sales-below-cost investigation in this case, it did not have the cost information necessary to calculate profit rates for related and unrelated parties, and so, used the profit data provided by NMB in Commerce's questionnaire. *Id.* at 8. Moreover, Commerce contends that it properly refused to rely upon the profit margins calculated by Torrington because Torrington's sample methodology was not representative of the transactions under investigation, as required by 19 U.S.C. § 1677f–1 (1988). *Id.* at 9.

■ According to 19 U.S.C. § 1677b(e)(2), Commerce *may* disregard related party sales in determining CV if it finds that "in the case of any element of value required to be considered, the amount representing that element does not fairly reflect the amount usually reflected in sales in the market under consideration of merchandise under consideration." This Court has sustained Commerce's use of the arm's-length test in conjunction with the profit variance test to determine whether to disregard related party sales. *See INA Walzlager Schaeffler KG v. United States*, 21 CIT ——, ——, 957 F.Supp. 251, 259 (1997). Hence, despite Torrington's claim to the contrary, Commerce is not required to automatically exclude related party sales found not to be at arm's length from the calculation of profit for CV.

■ Further, because Torrington did not ask for Commerce to conduct a below-cost sales investigation, as it could have under 19 C.F.R. § 353.31(c)(1)(ii) (1994), there was insufficient home market cost data for Commerce to use in conducting a profit variance test. This insufficiency is readily apparent in Commerce's proper refusal to accept Torrington's Profit Variance Submission, which only used a selected portion of NMB's CV data—about half of NMB's reported home market sales, themselves a sample of NMB's sales—in its attempt to calculate cost of production figures, which it then used to derive profit margins. *See* C.R. Doc. No. 22, at 5, Torrington's App., Ex. F. Torrington's calculations were also based on elements constituting an inaccurate basis for determining the cost of production for the subject merchandise. For instance, the selling, general and administrative expenses element used by Torrington is based on sales of the general class or kind of merchandise sold in the home market—a broad range of products that may

consist of subject and non-subject merchandise, and so, cannot be used as a basis for calculating the cost of production of the subject merchandise.

■ The relevant issue remaining is whether Commerce's decision to accept NMB's reported profit data for use in determining CV was reasonable under the present circumstances. The Court is disturbed with Commerce's outright reliance on the data supplied by NMB in its questionnaire response for the calculation of profit for CV. Related party transactions are generally treated with distrust and are subject to special rules under the antidumping statute. *See* 19 U.S.C. § 1677a(e) (U.S. price); 19 U.S.C. § 1677b(a)(3) (foreign market value); 19 U.S.C. §§ 1677b(e)(2) and (3)(CV). The Court is particularly concerned in this case, where Commerce determined that NMB's related party sales were *not* made at arm's length. *See* Def.'s Opp'n to Mot. J. Agency R. at 8 (stating Commerce was able to perform the arm's-length test but did not have adequate data to perform the profit variance test for related party sales that failed the arm's-length test). Hence, the Court is not convinced that the amount Commerce used for CV profit is "equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise under consideration ... in the ordinary course of trade," as required by section 1677b(e)(1)(B). Consequently, the Court remands this issue to Commerce to determine a proper methodology for calculating CV profit in the absence of cost of production data where related party sales are not made at arm's length.

### 2. Treatment of NMB's Route B Sales

Torrington claims Commerce incorrectly classified Route B sales as home market sales and relied on these sales as a basis for foreign market value ("FMV"). In particular, Torrington claims the evidence failed to show that bearings made in Thailand and exported to Singapore were in fact sold for consumption in Thailand because the record did not link shipments to Singapore with the bearings actually re-exported to Thailand. Further, Torrington argues Commerce im-

properly reduced FMV for pre-sale freight expenses incurred on Route B shipments by treating these costs as indirect selling expenses. Torrington's Mem.Supp.Mot.J.Agency R. at 17–21.

■ In its appeal from *Torrington Co. v. United States,* 19 CIT ——, 881 F.Supp. 622 (1995), Torrington chose not to appeal this issue. Similarly, as Torrington informed the Court in that case, it abandons the issue in this case. Torrington's Reply Mem.Supp.Mot.J.Agency R. at 9. The Court therefore dismisses this claim.

### 3. Determination of Reimbursement of Antidumping Duties

According to the reimbursement regulation, 19 C.F.R. § 353.26(a)(1), U.S. price is to be reduced by the amount a foreign manufacturer has paid for antidumping duties on behalf of a U.S. importer, or has reimbursed the importer for such duties. This Court has sustained Commerce's interpretation of the reimbursement regulation, holding that the regulation does not impose upon Commerce an obligation to investigate based on mere allegation. *See Torrington,* 19 CIT at ——, 881 F.Supp. at 631. Rather, "the party who requests [such an] investigation must produce some link between the transfer of funds and reimbursement of antidumping duties" between related companies before Commerce is required to commit resources to investigate the transfers. *Id.* at ——, 881 F.Supp. at 632.

Torrington claims this burden of proof is improperly placed on domestic industry. In particular, Torrington asserts that, because the foreign manufacturer and U.S. importer are related parties in exporter's sales price ("ESP") situations, a variety of reimbursement strategies may be employed (*e.g.,* pretended equity infusion, forgiven loans) that may be difficult, if not impossible, to detect. Hence, Torrington contends it is unreasonable to require domestic industry to show that reimbursement is occurring in such circumstances. Torrington's Mem.Supp.Mot.J.Agency R. at 21–24. While Torrington acknowledges that this Court has already upheld Commerce's interpretation,

Torrington asks the Court to reconsider its position.

Commerce responds that the Court has sustained Commerce on the reimbursement issue on several occasions, holding that a petitioner must provide evidence beyond a mere allegation. Def.'s Opp'n to Mot.J.Agency R. at 16–20. NMB agrees with the position taken by Commerce. NMB's Opp'n to Mot.J.Agency R. at 18–20.

This Court has consistently stated that a petitioner is required to provide adequate evidence that reimbursement is occurring before Commerce must undertake an investigation. *See, e.g., Torrington Co. v. United States,* 21 CIT ——, ——, 960 F.Supp. 339, 342 (1997); *INA Walzlager,* 21 CIT at ——, 957 F.Supp. at 270; *FAG Italia S.p.A. v. United States,* 20 CIT ——, ——, 948 F.Supp. 67, 74 (1996). As this Court has noted, the mere fact that an exporter and importer are related is insufficient to warrant the commitment of resources to investigate the transfers and transactions between them. *INA Walzlager,* 21 CIT at ——, 957 F.Supp. at 270. Moreover, under 19 C.F.R. § 353.26(b), an importer is required to file a certificate prior to liquidation indicating whether the importer has entered into any agreement or understanding for the payment or refunding of antidumping duties. *Torrington,* 19 CIT at ——, 881 F.Supp. at 632. Once an importer has attested that there is no such reimbursement, it is unnecessary for Commerce to conduct an investigation absent a sufficient allegation of customs fraud. *Id.*

The Court finds no reason to depart from its consistent position on this issue. Consequently, Commerce's decision not to investigate possible reimbursement of antidumping duties between related parties was proper.

### 4. *Revocation of the Antidumping Duty Order With Respect to NMB*

█ Commerce revoked the antidumping duty order with respect to NMB after finding that NMB had not sold ball bearings at less than fair market value for three consecutive review periods, including the instant review period, and would not do so in the future. *Final Results,* 61 Fed.Reg. at 33,714.

Torrington claims Commerce's revocation was based on two prior determinations of no or *de minimis* dumping margins for NMB, the administrative reviews of which remain subject to judicial review before the United States Court of Appeals for the Federal Circuit ("CAFC"). In particular, if the methodology and/or legal interpretation used in either of those cases, or in this case, fail to survive judicial review, Torrington contends the predicate for revocation of the order would be removed. Torrington's Mem.Supp.Mot.J.Agency R. at 24–25.

Commerce responds that it properly revoked the order with respect to NMB in this case. Nevertheless, in the event that NMB's margin is determined to be above *de minimis* by final court action in any of the three reviews, it would request permission of the Court to reinstate the order and instruct Customs to suspend relevant liquidation prospectively. Def.'s Opp'n to Mot.J.Agency R. at 21.

Under 19 U.S.C. § 1675(c) (1988), the administering authority has the power to revoke an antidumping duty order in whole or in part. Further, according to Commerce's regulations, it may revoke an order upon finding that a producer or reseller has not sold the merchandise at issue at less than fair market value for three consecutive review periods, including the instant review period, and concludes that the producer or reseller would not do so in the future. *See* 19 C.F.R. § 353.25(a). After making such a determination in this case, Commerce revoked the order with respect to NMB within the power granted to Commerce by the statute and in accordance with its stated regulations.

In the event that the CAFC determines that NMB's margins are above *de minimis,* Commerce would unquestionably have to petition to reinstate the order and instruct Customs to suspend liquidation prospectively. Nevertheless, at this time, Commerce's conclusion regarding NMB's margins has been upheld by this Court in the first of these three reviews, *see Federal–Mogul Corp. v. United States,* 21 CIT ——, 950 F.Supp. 1179 (1996) and, as such, forms a

proper basis for Commerce's revocation at this time. Consequently, Commerce's decision to revoke the antidumping duty order with respect to NMB was fully in accordance with law.

### Conclusion

In accordance with the foregoing opinion, this case is remanded to Commerce to allow it to determine a proper methodology for calculating CV profit in the absence of cost of production data where related party sales are not made at arm's length. The Final Results are sustained as to all other issues raised by Torrington.

### *ORDER*

This case having been duly submitted for a decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that this case is remanded to the Department of Commerce, International Trade Administration ("Commerce"), to determine a proper methodology for calculating CV profit in the absence of cost of production data where related party sales are not made at arm's length; and it is further

**ORDERED** that Commerce's determination is affirmed in all other respects; and it is further

**ORDERED** that the remand results are due within ninety (90) days of the date that this opinion is entered. Any comments or responses by the parties to the remand results are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date that the responses or comments are due.