FAG (U.K.) LTD., The Barden Corporation (U.K.) Ltd., the Barden Corporation, Fag Bearings Corporation, RHP Bearings Ltd., NSK Bearings Europe Ltd., and NSK Corporation, Plaintiffs,

v.

UNITED STATES, Defendant,

The Torrington Company, Defendant–Intervenor.

Slip Op. 98–133.
Court No. 97–01–00063–S1.

United States Court of
International Trade.

Sept. 16, 1998.

Grunfeld, Desiderio, Lebowitz & Silverman LLP (Max F. Schutzman, Andrew B. Schroth and Mark E. Pardo) for FAG (U.K.) Ltd., The Barden Corporation (U.K.) Ltd., The Barden Corporation, FAG Bearings Corporation.

Lipstein, Jaffe & Lawson, LLP (Robert A. Lipstein, Matthew P. Jaffe and Grace W. Lawson) for RHP Bearings Ltd., NSK Bearings Europe Ltd. and NSK Corporation.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Velta A. Melnbrencis, Assistant Director), of counsel: Mark A. Barnett, Stacy J. Ettinger, Myles S. Getlan, Sanjay J. Mullick, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.

Stewart and Stewart (Terence P. Stewart, Wesley K. Caine and Geert De Prest) for The Torrington Company.

### OPINION

TSOUCALAS, Senior District Judge.

Plaintiffs FAG (U.K.) Ltd., The Barden Corporation (U.K.) Ltd., The Barden Corporation and FAG Bearings Corporation (collectively "FAG/Barden"), and plaintiffs RHP Bearings Ltd., NSK Bearings Europe Ltd., and NSK Corporation (collectively "NSK/RHP") have filed separate motions for judgment on the agency record pursuant to Rule 56.2 of this Court. Plaintiffs challenge certain aspects of the final results of the Department of Commerce, International Trade Administration's ("Commerce") administrative review, entitled *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Singapore, Sweden, and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews*, 61 Fed.Reg. 66,472 (Dec. 17, 1996) ("*Final Results*"), as amended, *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Germany, Italy, Japan, and the United Kingdom: Amended Final Results of Antidumping Duty Administrative Reviews*, 62 Fed.Reg. 3,003 (Jan. 21, 1997).

### Background

The administrative review at issue concerns antifriction bearings ("AFBs") imported during the fifth period of review ("POR") from May 1, 1993 through April 30, 1994.[1] On December 7, 1995, Commerce published the preliminary results of the instant review. *See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Japan, Singapore, Sweden, Thailand, and the United Kingdom; Preliminary Results of Antidumping Duty Administrative Reviews, Partial Termination of Administrative Reviews, and Notice of Intent to Revoke Order*, 60 Fed.Reg. 62,817. On December 17, 1996, Commerce published the Final Results at issue. *See* 61 Fed.Reg. 66,472.

FAG/Barden challenges only those portions of the Final Results concerning AFBs from the United Kingdom, and claims that Commerce erred by: (1) conducting a below-cost sales test on data submitted by The Barden Corporation (U.K.) Ltd. and The Barden Corporation (collectively "Barden") without having reasonable grounds to believe or suspect that Barden had made below-cost sales and incorporating the results of the test

---

1. Because the administrative review at issue was initiated prior to January 1, 1995, the applicable law is the antidumping statute as it existed prior to the Uruguay Round Agreements Act, Pub.L. No. 103–465, 108 Stat. 4809 (1994). *See Torrington Co. v. United States*, 68 F.3d 1347, 1352 (Fed.Cir.1995).

in Barden's dumping margin; and (2) making a clerical error in the calculation of the value-added tax adjustment resulting in the exclusion of "other revenue" from the total unit price for FAG/Barden's home market sales.

NSK/RHP claims that Commerce erred by: (1) including in the U.S. sales database zero-priced sample distributions to potential customers; (2) concluding that sample transfers of ball bearings within a collapsed entity constituted sales for the purposes of calculating constructed value ("CV"); and (3) failing to reduce RHP Aerospace's (a division within NSK/RHP) cost of manufacturing and CV by the expenses associated with post-sale domestic inland freight.

## Discussion

The Court has jurisdiction over this matter under 19 U.S.C. § 1516a(a)(2) (1994) and 28 U.S.C. § 1581(c) (1994).

The Court must uphold Commerce's final determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1994). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). "It is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States*, 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd*, 894 F.2d 385 (Fed.Cir.1990).

### A. FAG/Barden's Claims

1. *Application of Commerce's Below–Cost Test to Barden*

■ During the third administrative review of AFBs, Commerce decided to collapse FAG (U.K.) Ltd. ("FAG") and Barden into a single entity (FAG/Barden)[2] for the purposes of calculating dumping margins. *Final Results of Antidumping Duty Administrative Reviews and Revocation in Part of an Antidumping Duty Order*, 58 Fed.Reg. 39,-729, 39,774 (July 26, 1993) ("*Third Review Final Results*"). Because FAG and Barden constituted a single entity in that review, Commerce performed a below-cost sales test on the combined FAG/Barden sales data. *Id.* at 39,737. During the fifth POR, Commerce similarly conducted a below-cost sales test on the combined FAG/Barden sales data and determined that Barden made below-cost sales. *Final Results*, 61 Fed.Reg. 66,490. Before the completion of the fifth review, however, this Court determined that Commerce had improperly collapsed the two companies in the third review. *See FAG Kugelfischer Georg Schafer KGaA v. United States*, 20 CIT ——, ——, 932 F.Supp. 315, 325 (1996). Consistent with the Court's decision in *FAG Kugelfischer*, Commerce thereafter treated FAG and Barden as separate companies. *Final Results*, 61 Fed.Reg. at 66,477 n. 1 & 66,490. Nevertheless, Commerce determined that it could not disregard its discovery, based on the results of the test performed on the inappropriately combined FAG/Barden sales data, that Barden made below-cost sales during the fifth POR. 61 Fed. Reg. at 66,490.

Commerce concedes that, before conducting the test, it did not have reason to believe or suspect that Barden made below-cost sales. Def.'s Partial Opp'n to Mot. J. Agency R. at 7. In fact, the below-cost allegation was brought specifically and exclusively against FAG alone. *Final Results*, 61 Fed.Reg. at 66,490. Commerce, however, argues that it could not ignore Barden's below-cost AFB sales when calculating CV. Commerce requests a remand to review the record and reconsider whether it had reasonable grounds to initiate a below-cost investigation

---

**2.** FAG (U.K.) Ltd. acquired The Barden Corporation around December 1991. *See Third Review Final Results*, 58 Fed.Reg. at 39,774.

According to the Final Results, the collapsed entity of FAG/Barden includes only The Barden Corporation (U.K.) Ltd., The Barden Corporation

and FAG Bearings (U.K.) Ltd. *See* 61 Fed.Reg. at 66,477. Where this Court references the Final Results, therefore, "FAG/Barden" refers only to these three companies. Plaintiff FAG/Barden, however, includes an additional related company, FAG Bearings Corporation.

of Barden's sales. Def.'s Partial Opp'n to Mot. J. Agency R. at 7–8.

FAG/Barden asserts that under 19 U.S.C. § 1677b(b) Commerce must have "reasonable grounds to believe or suspect" that sales in home market have been made below cost before conducting a below-cost sales test. FAG/Barden argues that, because Commerce had no reasonable grounds to believe that Barden had sold its AFBs below the cost of production ("COP") in the home market, this case should be remanded to Commerce to recalculate Barden's dumping margin without regard to the below-cost test results. FAG/Barden's Mem. Supp. Mot. J. Agency R. at 2, 4–10.

Torrington opposes FAG/Barden's motion, claiming that, based on sales data voluntarily provided by Barden, Commerce did in fact have reasonable grounds to suspect that Barden had sold its AFBs below cost. Torrington's Opp'n to Mot. J. Agency R. at 8–10. Moreover, Torrington argues that the Court's determination in *FAG* that the companies were improperly collapsed does not taint Commerce's finding of below-cost sales. *Id.* at 9.

Before conducting a below-cost investigation, Commerce is required to have reasonable grounds to believe or suspect that sales in the home market have been made at below-cost prices. *See* 19 U.S.C. § 1677b(b) (1988); *see also* 19 C.F.R. § 353.51(a) (1994). "Reasonable grounds" require "a *specific* and *objective* basis for suspecting that a *particular* foreign firm is engaged in home market sales at prices below its cost of production." *Al Tech Specialty Steel Corp. v. United States,* 6 CIT 245, 250, 575 F.Supp. 1277, 1282 (1983) (emphasis in original), *aff'd,* 745 F.2d 632 (Fed.Cir.1984). Reasonable grounds also exist in situations where a sufficient allegation of below-cost sales is made during the latest administrative review, and where previous administrative proceedings resulted in an affirmative determination of below-cost sales. *See FAG U.K. Ltd. v. United States,* 20 CIT ——, ——, 945 F.Supp. 260, 272 (1996).

In this case, Commerce previously had not found below-cost sales by Barden, nor had there been any allegation that Barden sold its AFBs at below-cost prices. In fact, Commerce conducted the below-cost test on Barden's COP data solely because of information it obtained when it improperly collapsed the two companies. Moreover, Commerce admits that it did not have reasonable grounds to believe that below-cost sales had occurred. *Final Results,* 61 Fed.Reg. at 66,490. Therefore, Commerce's actions failed to meet the requirements of 19 U.S.C. § 1677b(b) and were not in accordance with law.

Torrington gives significant weight to the fact that Barden voluntarily provided information, "so detailed and product-specific that Commerce could *conclude,* without further facts, that below cost sales had occurred." Torrington's Opp'n to Mot. J. Agency R. at 8 (emphasis in original). This argument has no merit. Commerce itself concedes, contrary to Torrington's statement, that it did not have the information necessary before conducting the test to conclude that Barden had sold AFBs below cost. The Court cannot speculate what Commerce could have concluded had it not inappropriately collapsed the companies and performed the below-cost sales calculations on the combined sales information.

Upon review of the record, the Court concludes that Commerce did not act in accordance with law when it collapsed FAG and Barden into a single entity, conducted a below-cost sales test on all sales made by that entity and incorporated the test results in the calculation of Barden's dumping margin. Consequently, the Court remands to Commerce to recalculate Barden's dumping margin without regard to the test results. Further, Commerce shall make necessary adjustments to correct the consequences of the improper collapsing of the companies and recalculate the dumping margins of both FAG and Barden, treating them as distinct entities.

### 2. *Clerical Error in Value–Added Tax Calculation*

The parties agree that, as the result of a clerical error in the calculation of the value-added tax ("VAT") adjustment, Commerce did not include other revenue (OTHEREVH)

in the total value of the unit price calculation. See FAG/Barden's Mem. Supp. Mot. J. Agency R. at 11; Torrington's Opp'n to Mot. J. Agency R. at 13; Def.'s Partial Opp'n to Mot. J. Agency R. at 8.

After a review of the record, this Court concludes that Commerce's computer program improperly excluded the variable OTH-EREVH from the total unit price calculation. Consequently, the Court remands to Commerce to correct the error in the VAT adjustment.

### B. NSK/RHP Claims

#### 1. NSK/RHP's Sample Transactions

In the Final Results, Commerce collapsed a number of companies and created NSK/RHP. See Final Results, 61 Fed.Reg. at 66,477.

NSK/RHP claims that Commerce erroneously included in its U.S. sales database gratuitous transactions in which it gave small quantities of AFBs to potential U.S. customers. NSK/RHP argues that, in light of the holding in NSK Ltd. v. United States, 115 F.3d 965 (Fed.Cir.1997), Commerce should be directed to exclude the samples distributed at no cost. NSK/RHP's Mem. Supp. Mot. J. Agency R. at 3, 9–10.

Commerce concedes it included sample transactions in its computation of NSK/RHP's U.S. sales. Commerce also concedes that, consistent with NSK, the case should be remanded so that it can exclude from NSK/RHP's U.S. sales database those sample transactions for which NSK/RHP received no consideration. Def.'s Partial Opp'n to Mots. J. Agency R. at 8–9.

■ Commerce is required to impose antidumping duties upon merchandise that "is being, or is likely to be, *sold* in the United States at less than its fair value." 19 U.S.C. § 1673(1) (1988) (emphasis added). A sale

requires both a transfer of ownership to an unrelated party[3] and consideration. NSK, 115 F.3d at 975. In other words, a transaction that involves no consideration is not a sale. Therefore, the distribution of product samples not supported by consideration falls outside the purview of 19 U.S.C. § 1673.

Accordingly, the Court remands to Commerce to exclude from NSK/RHP's U.S. sales database those transactions that were not supported by consideration.

#### 2. Calculation of Constructed Value
##### a. Sample Transactions

NSK/RHP challenges Commerce's calculation of CV profit. NSK/RHP argues that Commerce erred when it included in its home market sales figures transactions in which an affiliate gave sample bearings to NSK/RHP at no cost. NSK/RHP's Mem. Supp. Mot. J. Agency R. at 10.

Commerce concedes that it calculated dumping margins for NSK/RHP on the basis of home market sales data that included sample transactions for which NSK/RHP reported a price of zero. Commerce agrees with NSK/RHP that a remand is necessary in order to exclude from NSK/RHP's home market sales database these no-cost sample transactions.

■ Pursuant to NSK, 115 F.3d at 975, transactions not supported by consideration do not constitute "sales" for purposes of antidumping regulations and, therefore, cannot be included in the CV calculation. Consequently, the Court remands to Commerce to recalculate NSK/RHP's CV by excluding zero-priced sample transactions from NSK/RHP's home market sales database.

##### b. Related–Party Sales Between Collapsed Companies

■ In the Final Results, Commerce assumed that transactions between the compa-

---

**3.** Although the court's language defining a sale in NSK suggests that related parties cannot sell to each other, in trade practice, as this Court discusses below, related parties may, and do, sell to one another. These related-party sales, however, are scrutinized by Commerce and the courts because of the danger that related companies may manipulate sales prices to lower their dumping margin. See, e.g., NEC Home Elecs., Ltd. v. United States, 54 F.3d 736 (Fed.Cir.1995) (Commerce may consider unrelated-party sales to determine if related-party sales were made at arm's length); NTN Bearing Corp. v. United States, 19 CIT ——, ——, 905 F.Supp. 1083, 1099 (1995) (Commerce usually excludes related-party sales unless a respondent demonstrates that a related-party price is an arm's length price).

nies that make up NSK/RHP were related-party sales. *See Final Results*, 61 Fed.Reg. at 66,493. Commerce therefore performed its standard related-party sales analysis and provided the following:

> Related-party sales that fail the arm's-length test do give rise to the possibility . . . that certain elements of value, such as profit, may not fairly reflect an amount usually earned on sales of the merchandise. We considered whether the amount for profit on these sales to related parties was reflective of an amount for profit usually experienced on sales of the merchandise. To do so, we compared profit on sales to related parties that failed the arm's-length test to profit on sales to unrelated parties. If the profit on sales to related parties varied significantly from the profit on sales to unrelated parties, we disregarded related-party sales for the purpose of calculating profit for CV.

61 Fed.Reg. at 66,493.

As noted above, Commerce acknowledges that it erroneously included zero-priced sample distributions in the calculation of NSK/RHP's CV. However, Commerce requests that, after it excludes from the CV calculation transactions for which NSK/RHP received no consideration, it be permitted to recalculate CV profit using its related-party tests for any remaining transactions. If there are no related-party sales remaining, Commerce asks that it be allowed to recalculate CV with profit information from NSK/RHP's sample data for the general class or kind of merchandise. Def.'s Partial Opp'n to Mot. J. Agency R. at 12.

NSK/RHP argues that Commerce erred in its CV calculation when it performed a related-party sales analysis on the sales between the collapsed companies and rejected profit data that NSK/RHP submitted. NSK/RHP asserts that, because Commerce collapsed the companies into one entity, the transactions between the companies were not sales, but rather, intracompany transfers that should not be considered by Commerce when

calculating CV. Therefore, according to NSK/RHP, there were no related-party sales in this review and Commerce inappropriately applied its related-party sales test and rejected NSK/RHP's profit data. NSK/RHP's Mem. Supp. Mot. J. Agency R. at 3–6.

The issue presented by NSK/RHP is whether transfers of AFBs from one company to another with which it has been collapsed, should be deemed intracompany transfers and not sales; in other words, whether such transactions fall outside the jurisdiction of 19 U.S.C. § 1677 (1988) and antidumping law.[4]

Commerce collapses parties when it determines that the companies are so interrelated to each other that there is a possibility of price manipulation. *See, e.g., Nihon Cement Co., Ltd. v. United States*, 17 CIT 400, 425 (discussing criteria Commerce must consider to determine whether parties should be collapsed). However, Commerce's collapsing of parties does not preclude sales (i.e., transfer of ownership plus consideration) between the collapsed companies. *See Asociacion Colombiana de Exportadores de Flores v. United States*, 22 CIT ——, ——, 6 F.Supp.2d 865, 896 (1998) (companies may be collapsed even if sales between the collapsed companies were made at arm's length). Commerce's collapsing of parties and its CV calculation are separate. *See Queen's Flowers de Colombia v. United States*, 21 CIT ——, ——, 981 F.Supp. 617, 623 (1997). Therefore, NSK/RHP is incorrect in asserting that merely because the companies were collapsed, there were no related-party sales.

Transactions between collapsed parties may remain transfers between different, although related companies; i.e., the transactions remain *inter-company* related-party transfers, and do not become *intra-company* transfers. Consequently, when Commerce collapses related companies to determine their dumping margin, they become a single entity only for that purpose. They do not cease to be related parties; on the contrary, that is the reason why Commerce collapsed

---

**4.** The record indicates that most, if not all, of the related–party transactions were zero-priced transfers. Those transfers will be excluded from Commerce's CV profit calculations on remand on the basis that transactions for no consideration are not sales. Nevertheless, NSK/RHP raises this second argument for excluding such transfers from its home market database.

them. It was, therefore, reasonable for Commerce to treat transactions between companies that have been collapsed as related-party sales.[5]

Accordingly, the Court holds that Commerce's collapsing of parties does not preclude the treatment of transfers between the collapsed parties as related-party sales for the purpose of calculating antidumping margins. In fact, holding otherwise would defeat the purpose of collapsing related companies. Therefore, Commerce's treatment of sales between the collapsed companies as related-party sales was reasonable and in accordance with law.

■ In computing CV, Commerce shall include "an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise under consideration." 19 U.S.C. § 1677b(e)(1)(B) (1988). Commerce is afforded considerable discretion in deciding whether to include related-party sales when calculating CV. *Usinor Sacilor v. United States*, 18 CIT 1155, 1158, 872 F.Supp. 1000, 1004 (1994). Commerce may exclude such sales unless satisfied that the sales were made at arm's length. 19 C.F.R. § 353.45(a) (1994).

If related-party sales fail the arm's-length test, Commerce applies the variance test to determine whether the profit from related-party sales is fairly reflective of profits from unrelated-party sales. *INA Walzlager Schaeffler KG v. United States*, 21 CIT ——, ——, 957 F.Supp. 251, 259 (1997). The variance test thus involves a comparison of the sales figures at issue to those of unrelated-party transactions. A significant variance, in either direction, means that the value or profit from the related-party sales was not fairly reflective of profit earned on unrelated-party sales. *Id.*

This Court has consistently sustained Commerce's use of the arm's-length test in conjunction with the profit variance test to determine whether to disregard related-party sales in its calculation of CV. *See, e.g., Torrington Co. v. United States*, 21 CIT ——, ——, 973 F.Supp. 164, 166 (1997). If Commerce finds that reported transactions do not fairly demonstrate the value of the transactions being considered, Commerce may rely on sales of such or similar merchandise as best evidence available for its·calculations. *INA*, 21 CIT at ——, 957 F.Supp. at 259–60. Therefore, Commerce's practice as described in the Final Results is reasonable and in accordance with law.

Consequently, except for remanding to Commerce to recalculate CV by excluding zero-priced sample transactions from NSK/RHP's home market database, the Court affirms Commerce's CV methodology which evaluated transactions between the collapsed companies as related-party sales. For any remaining unrelated-party sales, Commerce is to use data of sales of such or similar merchandise in calculating CV.

### 3. *RHP Aerospace's Cost of Manufacturing and Constructed Value*

NSK/RHP asserts that, although Commerce verified the accuracy of RHP Aerospace's post-sale domestic inland freight and packing factors and used them to calculate foreign market value ("FMV"), it erroneously failed to reduce the cost of manufacturing ("COM") and CV of RHP Aerospace by the freight expense. NSK/RHP argues that Commerce's error resulted in the "double-counting" of RHP's postsale domestic inland freight costs in the COM and CV calculations.

Commerce admits that it committed an error which resulted in double-counting of

---

**5.** It is of course possible for related parties to transfer goods inter-company *without* there being a sale (this is one of the reasons Commerce scrutinizes such transactions). For example, mere passage of title alone does not effect a sale if the parent company maintains control over the subject merchandise. *See, e.g., VWP of America, Inc. v. United States*, 21 CIT ——, 980 F.Supp. 1280, 1283 (1997) (there is no bona fide sale where subsidiary simply acts as selling agent and alter ego for parent company). In this case, however, NSK/RHP does not raise this argument. Nor does NSK/RHP point to evidence in the record which would support an assertion that the transfers of goods were mere paper transactions, resulting in a parent company's maintenance of control over the goods. Instead, NSK/RHP boldly asserts that, solely because the companies were collapsed, their transactions were intra-company transfers.

inland freight in RHP Aerospace's COM and CV. Commerce requests that the case be remanded for correction of this error. Consequently, the Court remands to Commerce to reduce RHP Aerospace's COM and CV by the domestic freight factor to avoid double-counting.

*Conclusion*

In accordance with the foregoing opinion, this case is remanded to Commerce to: (1) recalculate Barden's dumping margin without regard to the results of the below-cost sales test; (2) recalculate both Barden's and FAG's dumping margins treating them as distinct entities; (3) correct the clerical error in the VAT adjustment by including the "other revenue" variable in the home market unit price calculation for FAG/Barden; (4) exclude transactions not supported by consideration from NSK/RHP's U.S. sales database; (5) exclude sample transfers for no consideration from NSK/RHP's home market sales database for the purposes of calculating CV profit; (6) recalculate CV for NSK/RHP by applying the arm's-length and profit variance tests to related-party transactions involving consideration, if any, and using sales of such or similar merchandise for any remaining unrelated-party sales; and (7) reduce RHP Aerospace's COM and CV by post-sale domestic inland freight costs. Commerce's determination is affirmed in all other respects.

## ORDER

This case having been duly submitted for a decision and the Court, after due deliberation, having rendered a decision herein, in accordance with said decision, it is hereby

**ORDERED** that the case is remanded to the Department of Commerce, International Trade Administration ("Commerce"), to recalculate Barden's dumping margin without regard to the results of the below-cost sales test; and it is further

**ORDERED** that Commerce is to recalculate both Barden's and FAG's dumping margins treating them as distinct entities; and it is further

**ORDERED** that Commerce is to correct the clerical error in the value-added tax adjustment by including "other revenue" in the home market unit price calculation for FAG/Barden; and it is further

**ORDERED** that Commerce is to exclude transactions not supported by consideration from NSK/RHP's U.S. sales database; and it is further

**ORDERED** that Commerce is to exclude sample transfers for no consideration from NSK/RHP's home market sales database for the purposes of calculating constructed value ("CV") profit; and it is further

**ORDERED** that Commerce is to recalculate CV for NSK/RHP by applying the arm's-length and profit variance tests to related-party transactions involving consideration, and using sales of such or similar merchandise for any remaining unrelated-party sales; and it is further

**ORDERED** that Commerce is to reduce the cost of manufacturing ("COM") and CV of RHP Aerospace by post-sale domestic inland freight costs; and it is further

**ORDERED** that Commerce is affirmed in all other respects; and it is further

**ORDERED** that the remand results are due within ninety (90) days of the date this opinion is entered. Any comments or responses are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days after the date responses or comments are due.